[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12011
Non-Argument Calendar
_____

D. C. Docket No. 9:11-cv-81049-DMM

RISA KAPLAN,

                          Plaintiff-Appellant,

versus

CODE BLUE BILLING & CODING, INC.,
LINDA M. YON,

                          Defendants-Appellees.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

_____

No. 12-12376
Non-Argument Calendar
_____

D. C. Docket No. 9:11-cv-81179-DMM

YANNO BEVACQUA,

                                                                    Plaintiff-Appellant,

versus

MAGNETIC MEDICAL MANAGEMENT, INC.,

                                                                    Defendant-Appellee.

************************************

_____

No. 12-12679
Non-Argument Calendar

_____

D. C. Docket No. 2:11-cv-14384-DLG

LINDA O'NEILL, individually and on behalf of
all others similarly situated,

                                                                      Plaintiff-Appellant,

versus

EAST FLORIDA EYE INSTITUTE, P.A.,
a Florida corporation,

                                                                    Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 22, 2013)

Before TJOFLAT, PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Plaintiffs Risa Kaplan, Yanno Bevacqua, and Linda O'Neill challenge the district court's grant, in favor of defendants, of summary judgment, dismissing Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-216 ("FLSA"). No reversible error has been shown; we affirm.

Plaintiffs were enrolled as students in MedVance Institute's Medical Billing and Coding Specialist program. To graduate, MedVance required all students to complete an externship after finishing their other course work. Kaplan, Bevacqua, and O'Neill completed student externships, respectively, at Code Blue Billing & Consulting, Inc. ("Code Blue"), Magnetic Medical Management, Inc. ("MMM"),

3

and East Florida Eye Institute, P.A. ("EFEI") (collectively, "Defendants"). Plaintiffs neither expected nor received payment for the work they performed during their externships.

Sometime after completing their externships, Plaintiffs each filed a complaint for minimum wage under the FLSA for work they performed during their externship. In essence, Plaintiffs argued that -- given the lack of formal structure and the repetitive nature of the work they were assigned -- they received very little educational benefit from their externships and, instead, they conferred economic benefit on Defendants. As a result, Plaintiffs contend that they qualify as "employees" under the FLSA and are entitled to minimum wage.

The district court granted Defendants' motions for summary judgment. The district court concluded that neither Kaplan nor O'Neill were "employees" within the meaning of the FLSA. And the court dismissed Bevacqua's suit as barred by the statute of limitations.

We review a district court's grant of summary judgment de novo; and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

First, we conclude that Bevacqua's suit was barred by the statute of limitations. An action for minimum wages under the FLSA must be brought within two years. 29 U.S.C. § 255(a). But the statute of limitations extends to three years if the claim is one "arising out of a willful violation." Id. That Bevacqua filed his lawsuit more than two years -- but less than three years -- after his cause of action accrued is undisputed.

Bevacqua argues that the three-year statute of limitations applies in his case because MMM violated willfully the FLSA when it assumed, without investigation, that externs did not need to be paid. To establish a willful violation of the FLSA for purposes of extending the limitations period, Bevacqua "must prove by a preponderance of the evidence that [MMM] either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162-63 (11th Cir. 2008). Where "an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA," we do not consider its acts willful. Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1324 (11th Cir. 2007).

Bevacqua failed to demonstrate that MMM's acts triggered the three-year statute of limitations. Bevacqua does not contend that MMM knowingly violated the FLSA. And -- because MMM knew that Bevacqua would receive academic

5

credit in exchange for his work and that completion of such an externship was required for graduation -- we cannot say that MMM acted recklessly in assuming that Bevacqua could be unpaid.  Thus, Bevacqua's complaint was subject to the two-year statute of limitations and was dismissed properly as time-barred.

On appeal, Kaplan and O'Neill argue that the district court erred in concluding that they were not "employees" under the FLSA.  Whether a person is an "employee" within the meaning of the FLSA[1] is a question of law that we review de novo.  Villareal v. Woodman, 113 F.3d 202, 205 (11th Cir. 1997).

In determining whether an employer-employee relationship exists under the FLSA, we must consider the "economic realities" of the relationship, including whether a person's work confers an economic benefit on the entity for whom they are working.  See Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 470 (11th Cir. 1982).  But, when a person works for his own advantage or personal purpose -- particularly when his work provides no "immediate advantage" for his alleged "employer" -- he is not an "employee" under the FLSA.  See Walling v. Portland Terminal Co., 67 S.Ct. 639, 641-42 (1947) (explaining that the FLSA's broad definition of "employee" "cannot be interpreted so as to make a person whose

---

[1] The FLSA defines "employee" as "any individual employed by an employer."  See 29 U.S.C. § 203(e)(1).  And the phrase "to employ" is defined as "to suffer or permit to work."  29 U.S.C. § 203(g).

6

work serves only his own interest an employee of another person who gives him aid and instruction.").

Although Kaplan and O'Neill argue that their externship experiences were of little educational benefit, they did in fact engage in hands-on work for their formal degree program.  Kaplan and O'Neill also received academic credit for their work and, by completing an externship, were eligible to earn their degrees.

Kaplan and O'Neill argue that, because they were performing tasks for Defendants' businesses, Defendants benefitted economically from their work.  The undisputed evidence, however, demonstrates that Defendants' staff spent time -- time away from their own regular duties -- training Plaintiffs and supervising and reviewing Plaintiffs' work.  Even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs caused Defendants' businesses to run less efficiently and caused at least some duplication of effort.  Defendants received little if any economic benefit from Plaintiffs' work.  Thus, under the "economic realities" test, Plaintiffs were not "employees" within the meaning of the FLSA.  See New Floridian Hotel, Inc., 676 F.2d at 470.

This conclusion is also supported by guidance from the Department of Labor's Wage and Hour Administrator.  The Administrator has identified six factors -- derived from the Supreme Court's decision in Portland Terminal --

pertinent to determining whether a trainee qualifies as an employee under the FLSA.[2] "The rulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Dade Cnty. v. Alvarez, 124 F.3d 1380, 1385 (11th Cir. 1997) (citing Skidmore v. Swift & Co., 65 S.Ct. 161, 164 (1944)).

The externship programs at Code Blue and EFEI satisfy all six of the Administrator's criteria. The training provided was similar to that which would be given in school and was related to Plaintiffs' course of study. The training benefitted Plaintiffs, who received academic credit for their work and who

---

[2]Under the Administrator's test, a trainee is not an "employee" if these six factors apply:

(1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

(2) the training is for the benefit of the trainees;

(3) the trainees do not displace regular employees, but work under close supervision;

(4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;

(5) the trainees are not necessarily entitled to a job at the completion of the training period; and,

(6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

Wage & Hour Manual (BNA) 91:416 (1975); see also Donovan v. Am. Airlines, Inc., 686 F.2d 267, 273 n.7 (5th Cir. 1982).

8

satisfied a precondition of graduation.  Both Kaplan and O'Neill were supervised closely and did not displace Defendants' regular employees.  Defendants received no immediate advantage from Plaintiffs' work and, at times, were impeded by their efforts to help train and supervise Plaintiffs.  And both Kaplan and O'Neill admit that they were unentitled to a job after their externships and that they understood that the externship would be unpaid.

Because no genuine issue of material fact exists, we affirm the district court's grant of summary judgment in favor of Defendants.

AFFIRMED.